## HALLUMS v. STATE OF INDIANA.

[No. 30,997. Filed January 3, 1968.]

*Don R. Money,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Murray West,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was charged with robbery and was convicted of assault with intent to commit a felony under Burns' Ind. Stat. Anno. § 10-401 (1956 Repl.), and was sentenced accordingly. This latter offense is an included offense in the crime of robbery. *Johnson* v. *Dowd, Warden* (1963), 244 Ind. 496, 193 N. E. 2d 906.

The trial was by the court without a jury. The only contention made upon appeal is that the evidence does not sustain the finding of guilty for the reason that there is a lack of evidence as to the identity if the defendant. For this reason, we must briefly review the evidence most favorable to the State.

It appears that Dominick Gentile was a grocer who operated a grocery known as Pinky's Market at 2636 N. Harding, Indianapolis; that at 10:00 a.m. on November 16, 1965, while his back was turned, somebody came in the back door of his shop and put a gun at his head and made him go back to the meat counter and said: "Give me your wallet" and he gave the robber his wallet. Then he also took from Gentile's side pocket an envelope containing money and said "Now you march up to the front of the store and clean out the register." Gentile testified that he took approximately $1200.00 in all from him at the time. Gentile said that he did not see the face of the robber and did not know whether he was white or negro.

Leona Brady testified as a witness that she lived next door to Pinky's Market above a hardware store; that about 10:00 o'clock on the day of the robbery she was sittting by her window and looking out, saw two men below the window. She testified:

"Q. Was the defendant one of those persons under your window?

"A. Yes ma'am. He and another boy, not quite as tall as he is."

She testified that she heard them in a conversation and that the defendant said:

"You go on, I think I can take him now because he is in the back."

She testified she then said to him:

" 'If I were you, young man, I wouldn't do that,' and he looked up in my face, my window. He looked right up at me

for a few minutes, and I thought maybe he'd run back the other way."

She then says instead of his leaving like she thought he would, he went toward the rear of the grocery store and when she got downstairs he was coming back and ran up the alley. She said she then called the police. On cross-examination, she said she saw no mask on his face, and further stated:

"Q. Now, if somebody else was to testify in this trial that the man that went in that store that day had a mask on his face, would you be mistaken on your description?

"A. Now listen, sir, I saw the man's face. I didn't see the mask.

. . .

"Q. Did you see this man hold a gun to Mr. Gintile's head?

"A. I certainly didn't.

"Q. So, you don't know whether this is the same man . . .

"A. Yes, I know he is the man because . . .

"Q. He's the man you saw outside the window?

"A. He's the man, sir, that I saw outside my window . . .

"Q. Alright.

"A. . . . and he's the man that I saw running by the time I got downstairs. He came back the same way he went, sir.

"Q. You saw this man outside your window? Is that right?

"A. I certainly did.

"Q. And, you saw this man run?

"A. I saw him run."

. . .

"Q. Which direction was the man running from when you saw him?

"A. He was running from the part back where the grocery is and he came right back like he went. There's a little barbwire fence there and the reason it is, there's a little narrow place, it's not a street, it's just between a vacant building, and I can stand up there in my

window and hear a lot of things, as far as that's concerned, and I heard that."

Other testimony consisted of the police investigation, and a witness, Myrtle Josephine Winters, testified that as she left the drug store and was walking towards Pinky's Market:

". . . I saw a man standing behind Pinky, who is the owner of the store. He had—he was standing directly behind him. Then I went into the store. He was still behind him and he was behind the cash register. He had on a red knitted cap, dark sunglasses and a handkerchief over his face."

She further testified he was a negro, about six foot three, weighing about one hundred and seventy-five pounds; that she saw him leave the store by the rear or north door and that he "went north"; that this is the direction of the hardware store next to Pinky's Market. She further testified:

"Q. Can you identiy the gentleman?
"A. Yes. He looks just like that man. I cannot identify him by his face, by what he had on his face, but he is the *the* same height as the defendant and everything."

The appellant places great reliance upon the case of *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641. However, that case may be easily distinguished from the one here, since an attempt was made to identify the defendant and by the person who was robbed while the robber had a handkerchief over his face. There was no corroborating evidence as to identification and the identifying witness had made contradictory statements that she could not identify any particular man. The court said in that case at 236 Ind. 55, 58:

"We have carefully read and reread the entire bill of exceptions in this cause, since this conviction can only be sustained by holding the dubious testimony of Mary Kriech as to the identity of the appellant, uncorrorborated as to any material essential, and contradicted by unimpeached evidence of an alibi, was sufficient to prove the appellant guilty beyond a reasonable doubt of the offense charged."

In the case before us the identification of the defendant as the person who made a statement indicating a robbery is un-contradicted. The evidence is uncontradicted that he ■ was seen going to the rear of the grocery store and running therefrom immediately thereafter. This is cor-roborated by a witness who came into the store and saw the robber leave through the rear door, corroborating the state-ment of Mrs. Bradey that the appellant had gone, and came back from the rear of the store. There is no testimony as to any alibi of the defendant in this case. Under the circum-stances we feel there was sufficient evidence, together with all reasonable inferences, to sustain the finding of the trial court. *Mason* v. *State* (1963), 244 Ind. 206, 191 N. E. 2d 705; *Donaldson* v. *State* (1952), 231 Ind. 434, 108 N. E. 2d 888; *Gilmore* v. *State* (1951), 229 Ind. 359, 98 N. E. 2d 677.

The judgment of the trial court is affirmed.

Lewis C. J., Mote and Hunter, JJ., concur.

Jackson, J., dissents with opinion.

### DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion herein and dissent thereto.

Appellant was charged by affidavit filed in Marion Criminal Court with the crime of robbery. The affidavit, omitting head-ing, formal parts and signatures, reads as follows, to-wit:

"BE IT REMEMBERED, That, on this day before me, NOBLE R. PEARCY, Prosecuting Attorney of the Nine-teenth Judicial Circuit, personally came DONALD C. ANDERSON who, being duly sworn, upon his oath says that HOWARD HALLUMS on or about the 16th day of NOVEMBER, A.D. 1965, at and in the County of Marion in the State of Indiana, did then and there unlawfully, feloniously, forcibly by violence and putting DOMINICK GENTILE, doing business as PINKY'S MARKET, in fear, take from the person and possession of the said DOMINICK GENTILE, doing business as Pinky's Market, money then and there of the value of ONE THOUSAND DOLLARS ($1,000.00) in lawful money, which property the said DOM-

INICK GENTILE, doing business as PINKY'S MARKET, then and there lawfully held in his possession and was then and there the property of DOMINICK GENTILE, doing business as PINKY'S MARKET, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Appellant waived arraignment and entered a plea of not guilty.

The cause was tried to the court without the intervention of a jury, resulting in the appellant being found guilty of Assault with Intent to Commit a Felony. The appellant was sentenced to the Indiana State Reformatory for not less than one (1) year nor more than ten (10) years.

Appellant contends on appeal that the decision of the trial court was contrary to law and not sustained by sufficient evidence in that the State failed to sustain the burden of proof as to him being the man or one of the men involved in the alleged robbery.

The evidence most favorable to the State shows that Dominick Gentile was the owner of the grocery known as Pinky's Market, located at 2636 North Harding Street, Indianapolis, Marion County, Indiana. On November 16, 1965, he was in the market when someone came in the door, shoved a gun into the side of his head and forced him to go to the back of the store. The assailant took Gentile's wallet and some money in an envelope in his side pocket. Gentile was then told to go to the front of the store and clean out the cash register which he did. He estimated that approximately $1,200.00, including cash and checks, was taken. He was not acquainted with the appellant. Gentile did not see the man who robbed him. He had no idea who it was. He did not know whether the robber was white or negro.

Leona Brady, who lived in an apartment over a hardware store next door to Pinky's Market, saw the appellant standing under her window at approximately 10:10 on November 16,

1965. She heard the appellant tell another person, "You go on, I think I can take him now because he is in the back." She grabbed a hammer and ran downstairs just in time to see the appellant run up the alley. He had on a short, dark coat and dark looking pants. Mrs. Brady went back up to her apartment and stayed there until the police came. She then came back downstairs and told the police that she had seen this man and had talked to him. Mrs. Brady told the police that the man she saw outside her windows was dark complexioned and had on a short, dark coat. She estimated that he was 5'9" tall, but she did not know his approximate weight. She did not see the appellant with a gun, nor did she see him hold a gun to Mr. Gentile's head. She was positive that the man she saw running was the same man she had cautioned earlier not to do anything. She was not sure whether he limped. She had not paid any attention as to whether he favored his right leg.

As she was walking toward Pinky's Market on November 16, 1965, Myrtle Josephine Winters saw a man standing behind the owner of the store. The man had on a red knitted cap, dark sunglasses and a handkerchief over his face. He was a dark negro man about 6'3" and about 175 pounds. She estimated his age to be 23 or 24 years. He looked like and was the same height as the appellant.

At the time he arrested the appellant, Donald Anderson, an Indianapolis police officer, noticed that the appellant walked with a limp and that he favored his left foot. Anderson had known the appellant for about 12 years and knew that appellant was about 31 years of age.

This Court cannot weigh evidence, but we will examine it to determine whether there is substantial evidence of probative value for the trial court to have reasonably inferred that the appellant was guilty. It is not enough that the evidence merely tends to support the conclusion of guilt; it must support it. *Johnson* v. *State* (1957), 236 Ind. 509, 141 N. E. 2d 444.

If the evidence merely tends to establish a suspicion of guilt,

it is not sufficient to sustain a conviction. *Robertson* v. *State* (1952), 231 Ind. 368, 108 N. E. 2d 711.

The State has the burden not only to prove the commission of the crime charged beyond a reasonable doubt but also to prove to the same degree that the defendant was the person who committed it.

An identification made by a stranger without sufficient opportunity to definitely fix features or characteristics is an opinion or conclusion of the identifying witness. A conviction resting upon an identification which is doubtful, vague or uncertain is not a conviction of guilt to a moral certainty, and it should be reversed.

From an examination of the entire record in this case I am unable to see how a prudent man could find that appellant was proved guilty beyond a reasonable doubt. In such case the issue is one of law for a decision of this Court. *Lee* v. *State* (1954), 233 Ind. 176, 118 N. E. 2d 115.

The prosecution has failed to sustain the burden of proof against the appellant. The appellant's motion for a new trial should have been sustained.

NOTE.—Reported in 232 N. E. 2d 597.